# UNITED STATES DISTRICT COURT

## FOR THE

## DISTRICT OF CONNECTICUT

SANTOS MORALES          )
     PLAINTIFF       )
                      )
          V.          )     CIVIL ACTION
                      )     CASE NO.:3:11CV1204(WWE)
STEVEN WEISS, MITCHELL RUBIN   )
RICHARD PHELAN, and ANDREW   )
CZUBATYI                )

## REVISED COMPLAINT

**First Count (As to Defendants Czubatyi and Phelan)**

**Parties and Jurisdiction**

1. This count is brought under 42 U.S.C. Section 1983 for violations of the civil rights of the plaintiff as set forth hereafter, including police actions inflicting pain and suffering and permanent injury on the plaintiff because of his nationality, ethnicity, and immigration status.

2. The plaintiff, Santos Morales (hereinafter designated as "Santos"), is a citizen of Guatemala who, at the time of the complained of actions was residing at 83 Lafayette Street, Stamford, CT 06902 for over five years and was an undocumented alien and is now in Stamford, Connecticut.

3. The defendant Andrew Czubatyi is a police officer with the Stamford Police Department and is a Connecticut resident.

4. The defendant, Richard Phelan is a police officer with the Stamford Police Department and a resident of Connecticut.

**Complaint**

5. On the night of August 31, 2008, the plaintiff Santos Morales (hereinafter referred to as Santos) was in a the Discovery Restaurant, on Stillwater Avenue, Stamford, Connecticut sitting and eating with a friend from Guatemala whom he knew as "Don Berto".

6. After eating, a younger man whom the plaintiff understood was "Don Berto's" son, came in and pulled out a gun, pointed it at Don Berto and said: "You are not my father, I'm going to kill you."

7. Santos told the gun holder not to shoot and that his friend was a good father. The gun holder then pointed the gun at Santos.

8. Santos knocked the gun away and succeeded in getting it in the struggle - surprised that "Don Berto" tried to keep him from getting it. Later investigation found the "Don Berto" had stolen the gun from his employer.

9. Santos then exited the restaurant and went about fifty feet up the street before turning around and waiting about twenty feet from the door of the restaurant for police to arrive.

10. Santos had his cell phone in his left hand but was unable to use the one hand to call 911 because of a prior injury to his index finger.

11. When the police arrived, Santos pointed his left hand in the directions of the men fleeing to direct the police, the first officer then following the man who had come in with the gun and his companion.

12. A police supervisor - the defendant Officer Andrew Czubatyi - arrived behind Santos and directed the first officer, the defendant Sgt. Richard Phelan, to come

back as Santos had the gun.

13. Officer Czubatyi, behind Santos, told him to drop the gun and Santos, after turning, put it down.

14. Thereafter, Officer Czubatyi tasered Santos on three separate occasions (All after Santos had put down the gun which was never pointed in any direction but down), the last on his back while he was on the ground and the prongs becoming embedded in Santos, causing Santos to lose control of his bowels.

15. During the above time and due to the location and patronage of the Discovery Restaurant, the police officers knew that Santos was of Hispanic ethnicity and that he was almost certainly undocumented as are about 90% of the Hispanic community and, most likely from Guatemala. They also knew that even with a crowd they could act with impunity.

16. Several officers proceeded to kick and mistreat Santos while he was on the ground including the defendant officer  Richard Phelan, while the plaintiff was helpless and being unnecessary and unreasonable force.

17. Other officers merely stood by. None of the officers made a report of this police abuse. Further, at least four video cameras were available to the police to video the incident.

18. The actions set forth above constituted police misconduct in violation of the civil rights of Santos including the criminal violation under  18 U.S.C.  Section 242  and Section 241.

19. Santos sustained serious and permanent injuries due to the actions of the defendant set forth above including scarring, injuries to his legs and back

resulting in a permanent injury to his ability to walk, as well as mental and psychological injuries.

20. Throughout the above time, Santos was trying to tell the officers what had happened and they told him to "Shut up."

21. The police took Santos to nearby Stamford Hospital and immediately, Santos tried to tell the hospital staff what had happened to him but an officer told Santos not to say anything.

22. After treatment at Stamford Hospital, Santos was taken to the police station where he finally got an officer to take a statement from him, asking the officers to investigate and find the perpetrators of the incident.

23. Due to the aforesaid actions of the police officers, in violation of the civil rights of the plaintiff, the plaintiff sustained, in addition to physical injuries, fears, mental trauma, and psychological injury, being part temporary and part permanent in nature and effect.

WHEREFORE, the plaintiff demands of the defendants Czubatyi and Phelan damages and punative damage for the injuries sustained as set forth above including attorney fees and costs.

**Second Court (As to Defendants Weiss and Rubin)**

**Parties and Jurisdiction**

1. This suit is brought under 42 U.S.C.  Section 1983 for violations of the civil rights of the plaintiff as set forth hereafter because of his nationality, ethnicity, and  immigration status;  and intentional actions preventing a fair trial as set forth hereinafter; and prosecutorial actions in violation of the civil rights of the plaintiff.

_ 4 ~

2. The plaintiff, Santos Morales (hereinafter designated as "Santos"), is a citizen of Guatemala who, at the time of the complained of actions was residing at 83 Lafayette Street, Stamford, CT 06902 for over five years and was an undocumented alien and is now in Stamford, Connecticut.

3. The defendant Steven Weiss is a deputy State's Attorney of the State of Connecticut, located at 123 Hoyt Street, Stamford, Connecticut 069051.

4. The defendant Mitchell Rubin is a deputy State's Attorney of the State of Connecticut, located at 123 Hoyt Street, Stamford, Connecticut 069051.

**Complaint**

5. Shortly after September 30, 2008, counsel for Mr. Morales provided a letter to the defendant Steven  Weiss urging help in investigating the matter, including a request for preservation of video relating to the crime alleged and proffering complete cooperation by Mr. Morales.

6. Mr. Weiss responded not by aiding in investigating but in contacting ICE for a detainer.

7. ICE responded that it was not interested.

8. Attorney Cunningham again tried to be heard on a motion to eliminate bond and, again, the state objected to evidence and the court denied the motion without evidence.

9. On February 13, 2009, attorney Cunningham hand delivered a copy of a renewed motion to eliminate bond to State's Attorney Steven Weiss.

10. On receipt of the motion of February 13, 2009, and with intent to violate the right of Santos to bond and to effectively aid in his defense, State's Attorney

Steven Weiss sent a note to one of the state's attorneys under him (herein defendant John Doe), asking that attorney to contact ICE and request that they "do us a favor on this one", such request not being in the ordinary course of business.

11. On February 19, 2011, ICE placed a detainer on Santos.

12. The actions of State's Attorney Steven Weiss, his associate "John Doe", and an officer at ICE, constituted a conspiracy to violate the civil rights of Santos Morales including his right to being free on bond and with knowledge that it would prevent investigation of the incident including police misconduct; as well as committing the violation of the civil rights in the filing of the detainer out of due course for the prevention of Santos getting a fair trial and for the purpose of preventing an investigation of the Stamford police officers.

13. State's Attorney Rubin worked together with Weiss in all of the above actions.

14. On March 26, 2009, a hearing commenced, ostensibly on a Motion for Accelerated Rehabilitation, which provided Santos a forum to present evidence, at which time two witnesses were presented: Sgt. Richard Phelan and Santos. The result was a reduction in bond from $50,000 to $1,000.

15. There was a delay until the end of June, 2010 in posting the bond while efforts were made to work with ICE, but DHS-ICE would do nothing until he was in their custody.

16. Once is DHS custody, Santos was placed in Greenfield, Massachusetts at the Franklin County Jail.

~ 61

17. The Immigration Court in Hartford set bond at $20,000 without permitting an evidentiary hearing. On July 29, 2009, a hearing was held on deportation. On motion for "voluntary departure" the Court ruled him eligible but with conditions that he stay in ICE custody and be unable to clear his name in Connecticut. In order to preserve the right to appeal, this was rejected and the Court ordered deportation.

18. In order to permit Santos to prove his innocence, a request was filed and granted in the Connecticut Superior Court in Stamford for an order of *Habeas Corpus* to return Santos to Connecticut for trial.

19. Motions were filed in the Connecticut Superior Court to dismiss the criminal actions for numerous reasons including that innocence and prosecutorial misconduct.

20. The Order of deportation was appealed to the Board of Immigration Appeals which sustained the appeal and remanded the matter to the Hartford Immigration Court.

21. On remand, the immigration court ruled it lacked jurisdiction because Santos was in  Connecticut custody.

22. This 2010 order was appealed but the appeal was dismissed by the Board of Immigration Appeals which ruled that it should not have remanded because Santos was in state custody.

23. Throughout the time the criminal case was pending, State's Attorney Mitchell Rubin was continuously requested to interview witnesses which he refused to do.

24. Said ASA Rubin knew at all times that counsel for Santos was unable to so

interview witnesses and Rubin not only would not interview any himself - though many names were provided - but refused to request the police to so interview and opposed efforts on behalf of Santos for provision of state help for investigation.

25. On April 1, 2011, the state nolled all charges. The *nolle* was accepted and it was placed on the record by counsel that he was innocent and only accepted because of Santos' health.

26. Santos' health was made worse by the abuse in the original arrest, and an attack by two prisoners attempting to rape Santos resulted in injuries to him and were caused by the failure of the State of Connecticut, Department of Corrections to safeguard prisoners, which failure violated the civil rights of Santos Morales.

27. The State of Connecticut, Department of Corrections further failed to properly treat additional ailments including an ulcer, leaving Santos in need of an operation.

28. Corrections officers in the State of Connection Department of Corrections also told Santos of prisoners who had died, placing him in immediate fear of death; all as a form of mental torture.

29. The physical and mental health deterioration was the health issue leading counsel to conclude he was unable to stand trial but also would likely die if he was not released immediately.

30, On April 5, 2011, ICE picked up Santos from Connecticut.  A Motion to Re-Open the deportation was filed the same day while Santos was in Connecticut in

ICE custody.

31. On April 5, 2011, the Hartford Immigration Court denied the motion to re-open on the basis it lacked jurisdiction - such being held by the Board of Immigration Appeals.

32. Continuously from April 5, on, Santos requested an interview on the basis of fear of being killed if he is deported; that in the period shortly before April 1, 2011, he was informed by family members that the man he knew as "Don Berto" was in Guatemala and had threatened that if Santos was ever in Guatemala he would kill him.

33. ICE did not allow Santos to avail himself of a "fear" interview on the basis that the order of deportation was "final", despite the fact that nothing could have been done for post-hearing relief because he had to be in Connecticut to clear his name prior to April 5, 2011.

34. ICE moved Santos to Pennsylvania at which time counsel had filed a Motion to Re-Open with the Board of Immigration Appeals - May 17, 2011.

35. On May 30, 2011, the matter was sent via complaint to the Internal Affairs Division of the Stamford, Connecticut Police Department.

36. Sergeant Ryan Devaney of the Stamford Police Department Internal Affairs indicated a desire to interview Santos Morales but the department was not willing to send officers to New Mexico to interview him there or to issue papers to bring him to Connecticut as it would entail the travel of two police officers.

37. The Deputy State's Attorney for the Stamford-Norwalk Judicial District. David Cohen,  was contacted concerning the police and the state's attorneys under him

and declined to ask for an NCIC "want" to bring Santos to Stamford for investigation. It was understood that the court could order a writ of Habeas Corpus to bring Santos back to Connecticut so that he could be interviewed.

38. During the entire period from September 2008 to April 2011, Santos was available for interview and the police department was urged to interview him but they would not.

39. A Motion for a Writ of Habeas Corpus was filed. Judge White indicated that he stated that he had no jurisdiction after entry of the *nolle*, and State's Attorney Mitchell Rubin concurred.

40. On June 17, 2011, the Motion to Re-Open was denied while counsel waited for evidence from Guatemala.

41. On July 7, 2011 an Amended Motion to Re-Open was filed with the Board of Immigration Appeals including affidavits from Guatemala concerning the death threats relating to Santos and his family.

42. On July 15, 2011 an emergency motion for a stay was filed which was denied by the BIA on July 26, 2011.

43. The incarceration of Santos Morales beyond September 30, 2008 was caused by the denial of bond, the denial of due process, the intentional actions in violation of his rights aimed at preventing him from proving his innocence. The injuries he sustained after that date, both physical and mental, were caused by the wrongful actions set forth above; and were in derogation of due process, and the civil and constitutional rights provided by the constitutions of the United States and the State of Connecticut and the laws thereof.

44. Due to the above actions by the defendants Weiss and Rubin, the plaintiff

has suffered physical and mental injuries and wrongful incarceration and loss of

earnings.

WHEREFORE, the plaintiff demands money damages, attorney fees, punitive

and exemplary damages and costs.

8/19/2017

THE PLAINTIFF

By _____
      Richard H.G. Cunningham
CT 14195
12 Kenilworth Drive East
Stamford, CT 06902
Tel. (203) 359-0351
Fax. (203) 517-9385
E-mail: rhgc3333@gmail.com
His Attorney

- 11 -