UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SANTOS MORALES, | : | 3:11cv1204 (WWE) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| STEVEN WEISS, MITCHELL RUBIN, | : | |
| RICHARD PHELAN, ANDREW | : | |
| CZUBATYI, | : | |
|     Defendants. | : | |

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Santos Morales asserts this civil rights action against defendants City of Stamford Police Officers Richard Phelan, and Andrew Czubatyi; and Connecticut State prosecutors Steven Weiss and Mitchell Rubin.

Defendants Weiss and Rubin have filed a motion for summary judgment on the basis of prosecutorial immunity.

## BACKGROUND

Defendants Weiss and Rubin have submitted a statement of material facts in compliance with the Local Rules of Civil Procedure. Plaintiff Morales, who is represented by counsel, has filed an affidavit signed by his counsel.[1] The Court has culled the following factual background from the allegations of the complaint and the parties' evidentiary submissions on this motion for summary judgment.

Plaintiff is a citizen of Guatemala who, at the time relevant to this action, was residing as an undocumented alien in the City of Stamford, Connecticut. According to the allegations of the complaint, on the evening of August 31, 2008, plaintiff was in a

---

[1] Because plaintiff has failed to comply with Local Rule of 56(a)(2), all properly supported material facts set forth in defendants' 56(a)(1) statement are deemed admitted. Lewis v. Cavanaugh, 2015 WL 540593 at *1 (D. Conn. 2015).

restaurant when someone he knew pulled out a gun and confronted another patron. Plaintiff allegedly wrested the gun from the individual and exited the restaurant. The Stamford Police, including defendants Phelan and Czubatyi, allegedly tasered, and kicked plaintiff while he was on the ground. Plaintiff was later charged with unlawful possession of a firearm and taken into state custody.

Defendant Weiss is a Supervisory State's Attorney and Rubin is a Deputy State's Attorney in Stamford. Weiss avers that, as a law enforcement official, it was within the scope of his duties to contact Immigration and Customs Enforcement ("ICE") with regard to a criminal defendant whose immigration status may warrant investigation. He states that he had an inspector of the State's Attorney's Office contact ICE to check on the plaintiff's immigration status because the plaintiff had no identification, no social security number and no alien registration number.

Plaintiff's attorney, Richard Cunningham, asked Weiss about interviewing certain witnesses. Weiss asserts that Cunningham did not provide him with specific identities or addresses of witnesses; and that he told Cunningham to contact the police.

Plaintiff alleges that on February 13, 2009, Attorney Cunningham renewed a motion to eliminate bond and hand delivered a copy to defendant Weiss.

Attorney Cunningham avers that he reviewed the State's Attorney file, where he found a yellow note signed by defendant Weiss that directed an Assistant State's Attorney to contact ICE to place a detainer on plaintiff Morales "as a favor." Cunningham asserts that the file indicated that this request occurred after ICE had already expressed that it was not interested in placing a detainer on plaintiff but prior to a March 26, 2009 hearing, at which time bond was reduced from $50,000 to $1,000.

On February 19, 2009, an ICE detainer was placed on Morales and his deportation was ordered. Plaintiff was placed in the custody of ICE from June 19, 2009 through September 8, 2009. Thereafter, plaintiff was held in the custody of the Department of Correction until April 5, 2011.

On April 1, 2011, defendant Rubin nolled all charges against plaintiff. By affidavit, Rubin avers that the charges were nolled because plaintiff had been in custody for more than two years, and plaintiff would likely have received no more than a one-year sentence of incarceration had the case gone to trial.

This Court dismissed the Section 1983 claims against defendants Weiss and Rubin on the grounds of prosecutorial immunity. On appeal, the Second Circuit concluded "that the district court erred in dismissing Morales's claims against prosecutors Weiss and Rubin without affording plaintiff the opportunity to amend his pro se complaint to allege sufficient facts that those defendants acted outside the scope of their roles as prosecutors and, thus, were not shielded by absolute immunity." Plaintiff was, in fact, represented by counsel during the proceedings before the district court, although he appeared pro se in proceedings before the Court of Appeals.

After remand to this Court, plaintiff amended his complaint. The discovery deadline has passed. Plaintiff is represented by the same counsel who represented him prior to his appeal to the Second Circuit.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when

reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

The complaint alleges that defendants Weiss and Rubin are liable for prosecutorial misconduct because Weiss never made an attempt to conduct or request an investigation of plaintiff's case despite requests by plaintiff's attorney Cunningham; it alleges that defendants sought the ICE detainer on plaintiff to interfere with plaintiff's right to bond and aid in his own defense.

Absolute Prosecutorial Immunity

A prosecutor who acts within the scope of his duties in initiating and pursuing a criminal prosecution is entitled to absolute immunity and is not subject to suit under 42 U.S.C. § 1983. Imbler v. Pachtman, 424 U.S. 409, 427 (1976). A prosecutor's entitlement to absolute immunity depends primarily on the nature of the function

performed rather than the office. Lawson v. Abrams, 863 F.2d 260, 262 (2d Cir. 1988). Prosecutors are immune from Section 1983 claims for actions that are "intimately associated with the judicial phase of the criminal process." Imbler, 424 U.S. at 430. Thus, prosecutorial immunity attaches to all actions taken by a prosecutor in preparing for the "initiation of judicial proceedings," which occur in the course of the prosecutor's role as an advocate for the state. Kalina v. Fletcher, 522 U.S. 118, 139 (1997).

"Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995). In Hill, a prosecutor's alleged acts of, inter alia, "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" were "clearly protected by the doctrine of absolute immunity as all are part of his function as an advocate." Id. at 661. "Absolute immunity applies to protect the prosecutor even in the face of a complaint's allegations of malicious or corrupt intent behind the acts." Giraldo v. Kessler, 694 F.3d 161, 166 (2d Cir. 2012). The relevant question is whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor. Id.

A prosecutor engaged in administrative duties that are directly connected to the conduct of a trial is entitled to absolute immunity. Jack v. County of Nassau, 2016 WL 1452394, at *6 (E.D.N.Y. 2016) (citing cases). Generally, a prosecutorial function depends upon whether there is pending a court proceeding in which the prosecutor is acting as an advocate. Warney v. Monroe County, 587 F.3d 113, 123 (2d Cir. 2009).

The official claiming immunity bears the burden of demonstrating that the particular immunity claimed applies.  Giraldo, 694 F.3d at 165.

Qualified Immunity

Prosecutors do not enjoy absolute immunity for "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate."  Imbler, 424 U.S. at 430–31.  Absolute immunity is also not available when a prosecutor undertakes conduct that is beyond the scope of his litigation-related duties.  Barbera v. Smith, 836 F.2d 96, 100 (2d Cir. 1987).  The Supreme Court has indicated that searching for clues and corroboration that might lead to a recommendation for an arrest is an administrative investigatory function that falls under qualified immunity.  Buckley, 509 U.S. 259, 273 (1993).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009).  Consequently, a defendant is entitled to qualified immunity if "(1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right."  Hartline v. Gallo, 546 F.3d 95, 102 (2d Cir. 2008).

"A right is clearly established when the contours of the right [are] sufficiently clear that a reasonable official would understand that what [he or she] is doing violates that right."  Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir. 1998).  "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in

deciding whether a right is clearly established." Moore v. Vega, 371 F.3d 110, 114 (2d Cir. 2004). The Court need not rely on a "case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The defense of qualified immunity is an affirmative defense and a defendant must prove that it would be clear to a reasonable public official that his or her conduct was objectively reasonable. See Lore v. City of Syracuse, 670 F.3d 127, 149 (2d Cir. 2012) (noting that qualified immunity is an affirmative defense for which defendants have the burden of proof). With respect to summary judgment, a court should find qualified immunity only where an official has met his or her burden demonstrating that no rational jury could conclude that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. Coollick v. Hughes, 699 F.3d 211, 219 (2d Cir. 2012).

Weiss

In this instance, Weiss's decisions regarding interviewing witnesses fall within his prosecutorial role in preparing a case for judicial proceedings. See Buckley, 509 U.S. at 273. Weiss's conduct with regard to his advocacy during the bond hearing is also protected under the doctrine of prosecutorial immunity. Root v. Liston, 444 F.3d 127, 131 (2d Cir. 2006).

However, it remains unclear whether Weiss's conduct with respect to having ICE place a detainer on plaintiff falls within the ambit of the prosecutorial function as it does not directly implicate the prosecutor's role as an advocate. Accordingly, for purposes of ruling on this motion, the Court will assume that such conduct referring a state criminal

defendant to another law enforcement agency reflects an administrative function and is subject to qualified immunity analysis.

Plaintiff asserts that defendant Weiss acted outside the scope of his office when he sought the detainer on plaintiff "as a favor," not as a matter of course in notifying ICE of an undocumented criminal defendant. In support of his assertion that defendant Weiss acted outside the scope of his duties by interfering with plaintiff's right to make bond and aid in his own defense, defendant's attorney has averred by affidavit that he "found in the file of the state's attorney, a yellow note signed by Mr. Weiss (as 'Steve' addressed to Asst. State's Attorney David Applegate (as 'Dave'), directing him to contact ICE and request ICE to place a detainer 'as a favor.'" Even accepting that Weiss did instruct the other prosecutor to request a detainer "as a favor," defendant Weiss is still entitled to qualified immunity. See Tartaglione v. Pugliese, 2002 WL 31387255 at *7 (S.D.N.Y. 2002) (Even if prosecutor's acts were outside scope of official duties, prosecutor was still entitled to qualified immunity). Weiss has averred that plaintiff had no identification, no social security and no alien registration number and that he had no role in ICE's decision to place the detainer. Weiss's request for an ICE detainer on an undocumented state criminal defendant did not violate a clearly established statutory or constitutional rights. As it was objectively reasonable for Weiss to believe that his conduct did not violate plaintiff's statutory or constitutional rights, qualified immunity applies.

Summary judgment will be granted in defendant Weiss's favor on the basis of absolute prosecutorial immunity and qualified immunity.

Rubin

Plaintiff has alleged that defendant Rubin refused plaintiff's attorney's request to interview witnesses despite Rubin's knowledge that plaintiff's attorney was unable to do so.  Plaintiff also alleges that defendant Rubin opposed efforts on behalf of plaintiff for provision of state help for an investigation.  In his affidavit, Rubin states that he received two letters from plaintiff's attorney, contacted plaintiff's attorney two times, and nolled the charges against plaintiff.

Prosecutorial immunity shields Rubin from liability.  According to the alleged facts and his affidavit, Rubin's involvement in this case was limited to his work as an advocate in prosecuting for the state.  Summary judgment will be granted in favor of both defendants.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [doc. 65] is GRANTED.


Dated this 19th day of July, 2016, at Bridgeport, Connecticut.


                                          /s/Warren W. Eginton
                                          Warren W. Eginton
                                          Senior U.S. District Judge